# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| RACHEL BULLOCK | § | |
| | § | |
| | § | A-09-CV-413 LY |
| V. | § | |
| | § | |
| ABBOTT AND ROSS CREDIT | § | |
| SERVICES, L.L.C. | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO: THE HONORABLE LEE YEAKEL
     UNITED STATES DISTRICT JUDGE

Before the Court is Plaintiff's Motion for Entry of Final Default Judgment (Clerk's Doc. No. 8). The District Court referred the above-styled case to the undersigned for hearing and report and recommendation, pursuant to 28 U.S.C. §636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, as amended. In accordance with the order of referral, the Court held an evidentiary hearing in this case on October 19, 2009. Having now received the Plaintiff's Brief on Damages, the Court hereby issues the following Report and Recommendation.

### I. GENERAL BACKGROUND

In July 2008, Plaintiff Rachel Bullock ("Plaintiff") obtained a $ 350.00 "payday" loan[1] from Payday-Loan-Yes. After Plaintiff defaulted on the loan, Payday-Loan-Yes assigned Plaintiff's debt to Abbott and Ross Credit Services, L.L.C. ("ARCS" or "Defendant"), a debt collection agency. On April 13, 2009, an ARCS employee, Brian Miller ("Miller"), called Plaintiff at her place of

---

[1] A "payday" loan is a short-term consumer loan that is generally made for a term of up to two-weeks, or a typical consumer's pay period.

employment—the Texas School for the Deaf—and asked to speak to Ms. Bullock. When he was told that Plaintiff was not in, Miller asked to speak to Plaintiff's supervisor. The call was transferred to Ms. Cynthia Foss, Plaintiff's immediate supervisor. Miller proceeded to tell Ms. Foss that he was with "Travis County" and that unless Plaintiff paid off her loan, he would be coming to her office to serve her with court papers. Ms. Foss then relayed the message to Plaintiff and informed her that any service of process must go through the Superintendent's office and that if Miller came to the school to serve Plaintiff with a lawsuit, Ms. Foss would have to inform her supervisor about the matter.

After Plaintiff received Ms. Foss's message, Plaintiff immediately telephoned Miller who she believed at this point was an official with Travis County. During the conversation, Miller again threatened Plaintiff by telling her that unless she made immediate arrangements to pay the loan, he would be coming to her work to serve her with a lawsuit. Plaintiff informed Miller that she could not pay the loan off because she only had $30 on hand. Miller told Plaintiff to go to Wal-Mart to purchase a prepaid Visa card in order to make the payment over the phone. Because Plaintiff alleges that she was frightened that Miller would be coming to her office to serve her with a lawsuit, Plaintiff immediately went to Wal-Mart to purchase a prepaid Visa card. Plaintiff then spent the entire afternoon trying to get the Visa card activated in order to pay off the loan. When Plaintiff called ARCS that same afternoon to make the payment, she spoke to Lisa Johnson who again told Plaintiff that she had to pay off the loan in order to stop ARCS from serving her with papers at her work. Because she was unable to get the card activated that day, Plaintiff called ARCS the next day, on April 14, 2009, and spoke to Lisa Johnson who once again perpetuated the false threat of service of a lawsuit on Plaintiff. After Plaintiff made the $30.00 payment with the Visa card over the

telephone, Ms. Johnson told Plaintiff that ARCS would be sending Plaintiff a settlement letter confirming that Plaintiff had in fact paid off the loan.

On May 26, 2009, Plaintiff filed the instant lawsuit against ARCS alleging claims under the Racketeering and Corrupt Influenced Organizations Act, 18 U.S.C. § 1961(1), the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, the Texas Debt Collection Act, Chapter 392 of the Finance Code, the Texas Deceptive Trade Practices Act, Chapter 37 of the Texas Business and Commerce Code, as well as asserting state common law claims of intentional infliction of emotional distress and invasion of privacy by way of intrusion. After the Defendant failed to answer the lawsuit, Plaintiff filed a Motion for Default Judgment. On August 12, 2009, the Clerk entered default against the Defendant. See Clerk's Docket No. 7. On August 12, 2009, Plaintiff filed a Motion for Hearing on Damages and for Entry of Final Default Judgment against the Defendant in this case. See Clerk's Docket No. 8. The District Court granted the motion, in part, by granting the request for a hearing on the damages issue and referring that issue to the undersigned for hearing and report and recommendation. The Court held an evidentiary hearing on the issue of damages on October 19, 2009.

## II. STANDARD OF REVIEW

Prior to obtaining a default judgment under Rule 55(b), a party must obtain an entry of default from either the court or the clerk. See FED. R. CIV. P. 55(a). "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a). Upon entry of default, the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must still be proven. *U.S. For Use of M-CO Const.,*

*Inc. v. Shipco General, Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). If the amount of damages is not for a "sum certain," then the Court must conduct an inquiry to determine the amount of damages before entering a Final Default Judgment. FED. R. CIV. P. 55(a) & (b). The plaintiff must demonstrate with "reasonable certainty" the amount of damages that she is entitled to. *Credit Lyonnais Sec. (USA) v. Alcantara*, 183 F.3d 151, 152 (2nd Cir. 1999).

### III. ANALYSIS

As noted above, Plaintiff's Complaint alleges claims under the Racketeering and Corrupt Influenced Organizations Act ("RICO"), 18 U.S.C. § 1961(1), the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692,[2] the Texas Debt Collection Act ("TDCA"), § 392.304 of the Texas Finance Code,[3] the Texas Deceptive Trade Practices Act ("Texas DTPA"), Tex. Bus. & Comm. Code § 17.50, as well as asserting Texas common law claims of intentional infliction of emotional distress and invasion of privacy by way of intrusion. Because the Defendant "failed to plead, respond, or otherwise defend in said action" the Clerk entered a default against the Defendant on August 12, 2009, pursuant to Rule 55(a). Because default has been entered in this case, Plaintiff's

---

[2]Congress enacted the FDCPA to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). The FDCPA prohibits the use of any "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The FDCPA is a strict liability statute and thus does not require a showing of intentional conduct on the part of a debt collector and a single violation of the statute is sufficient to establish civil liability. *Edwards v. Niagara Credit Solutions, Inc.*, 586 F. Supp.2d 1346, 1357 (N.D. Ga. 2008) (citing *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2nd Cir. 1993)).

[3]Courts variously refer to this act as the Texas Debt Collections Act, Texas Debt Collection Act, Texas Debt Collections Practices Act, Texas Debt Collection Practices Act, Texas Collection Practices Act, or simply as Chapter 392 of the Texas Finance Code. *See B.F. Jackson, Inc. v. CoStar Realty Information, Inc.*, 2009 WL 1812922 * 2 n. 20 (S.D. Tex. 2009). The same actions that are unlawful under the FDCPA are also unlawful under the TDCA. See *Prophet v. Myers*, 2008 WL 2328349 at *3 (S.D. Tex. June 4, 2008).

factual allegations against the Defendant regarding its liability are taken as true. *Shipco General, Inc.*, 814 F.2d at 1014. Thus, the Court need only determine the amount of damages in this case. Based upon Defendant's violations of the above-statutes, Plaintiff seeks $1,000 in statutory damages, $50,000 in actual mental anguish damages, $150,000 in exemplary damages, equitable relief in the form of liquidating the Defendant's assets, $12,160.95 in attorney's fees and expenses, and if necessary, an additional $25,000 in appeal fees and expenses. The Court will now determine if Plaintiff has demonstrated with "reasonable certainty" the amount of damages that she is entitled to in this case.

**A.      Statutory Damages**

Based upon Defendant's violation of the FDCPA, Plaintiff seeks an award of statutory damages under 15 U.S.C. § 1692k(a). The FDCPA provides that creditors who violate the Act are liable to the debtor for statutory damages up to $1,000.00. 15 U.S.C. § 1692k(a).[4] To be eligible for statutory damages, a plaintiff must establish that the FDCPA was actually violated, as the Plaintiff has done in this case. *Lester E. Cox Medical Center v. Huntsman*, 408 F.3d 989, 993 (8th Cir. 2005). In assessing statutory damages, the Court must consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. § 1692k(b)(1). Based upon Defendant's abusive debt collection practices, the Court finds that Plaintiff should be awarded the maximum amount of statutory damages under the Act. See *Myers v. LHR, Inc.,* 543 F. Supp.2d 1215, 1218(S.D. Ca. 2008) (awarding plaintiff maximum amount of statutory damages under §1692k(b) based on

---

[4]The FDCPA also provides for actual damages and attorney's fees and costs, which the Court will address separately below. See 15 U.S.C. § 1692k(a)

defendant's egregious conduct which included threatening plaintiff with lawsuit and garnishment of her wages). Accordingly, the Court will recommend that the District Court award Plaintiff $1,000.00 in statutory damages under 15 U.S.C. § 1692k(b).

**B.    Mental Anguish Damages**

Plaintiff also seeks $50,000.00 in actual mental anguish damages under the FDCPA and the Texas Debt Collection Practices Act. A plaintiff may recover actual damages for mental anguish under both the FDCPA,15 U.S.C. § 1692k(a)(1) and the TDCA, TEX. FIN. CODE ANN. § 392.403(a)(2). *See Baruch v. Healthcare Receivable Mangt., Inc.*, 2007 WL 3232090 * 2 n.7 (E.D.N.Y. Oct. 30, 2007); *Monroe v. Frank*, 936 S.W.2d 654, 661 (Tex. App.– Dallas1996, writ dism'd w.o.j.). However, to recover such damages, the claimant must introduce direct evidence of the nature, duration, and severity of the mental anguish, thus establishing a substantial disruption in the claimant's daily routine. *See Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 54 (Tex. 1997); *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995). In addition, courts must "closely scrutinize" awards of mental anguish damages. *Giles*, 950 S.W.2d at 54.

In the instant case, Plaintiff testified at the hearing that she suffered anxiety, worry and embarrassment as a result of Defendant's actions in this case. Specifically, Plaintiff testified that after Miller called her employer regarding her unpaid debt, she felt offended and embarrassed that her co-workers and supervisors were now aware of her private financial problems. In addition Plaintiff testified that she was worried that she would be served with a lawsuit at work and even might be arrested. Plaintiff further stated that because she is a single mother, she was extremely worried about what would happen to her nine-year-old daughter if in fact she was arrested. Accordingly, Plaintiff testified that she immediately drove to Wal-Mart to obtain a prepaid Visa card

to pay off the debt. After she paid off the debt, Plaintiff stated that she continued to worry that she would be served with a lawsuit or arrested since she never heard from the Defendant again. Plaintiff testified that she continued to worry about the matter even after she hired counsel to represent her in the instant matter.

While the Court finds that a reasonable person in Plaintiff's position would have suffered some emotional distress as a result of Defendant's harassing telephone calls and threats, the Court finds that her request for $50,000 is unreasonable given Plaintiff's testimony. Plaintiff's testimony does not demonstrate that she experienced any long term disruption in her daily routine as a result of Defendant's phone calls. In other FDCPA cases which involve similar facts and alleged injuries as the instant case, courts have awarded similar claimants approximately $1,000 to $3,000 in mental anguish damages. *See, e.g., Cooper v. Ellis Crosby & Assoc., Inc.*, 2007 WL 1322380 at *2 (D. Conn. May 2, 2007) (awarding plaintiff $3,000 in mental anguish damages where debt collection agency employee identified himself as an investigator and called plaintiff at work and threatened to have her arrested if she did not pay debt); *Gervais v. O'Connell, Harris & Assoc., Inc.*, 297 F. Supp.2d 435, 440 (D. Conn. 2003) (court reduced plaintiff's mental anguish damages award to $1,500 where events were brief in time and although plaintiff testified that he was fearful of having another heart attack after debt collection agency employee hounded plaintiff for a week and misrepresented that he was an attorney, plaintiff did not need the care of a physician as a result of these events); *Teng v. Metropolitan Retail Assoc.,* 851 F. Supp. 61, 69 (E.D.N.Y. 1994) (awarding plaintiff $1,000 in damages where defendant identified himself as a City Marshall and called plaintiff several times in one day including plaintiff's employer and threatened to take away his furniture). In contrast to the unfair debt collection cases in which courts have upheld substantial mental anguish

7

damages,[5] Plaintiff did not suffer any long term emotional distress or physical ailments from Defendant's unfair debt collection practices in this case. Moreover, Defendant's harassing behavior was relatively minor (making one telephone call to Plaintiff's employer) and brief (the entire matter was resolved in two days) compared to those cases awarding substantial mental anguish damages. Based upon the foregoing, the Court finds that an award of $2,000.00 in mental anguish damages is supported by the evidence and would be reasonable in this case.

**C.    Treble Damages**

Plaintiff also seeks three times the amount of actual damages sustained in this case pursuant to 18 U.S.C. § 1964(c) of RICO.[6] Under this provision, treble damages are mandatorily assessed upon a finding of liability under RICO. 18 U.S.C. § 1964(c); *Regency Communications, Inc. v.*

---

[5]*See e.g.*, *Baruch v. Healthcare Receivable Mangt., Inc.*, 2007 WL 3232090 at *3-4 (E.D.N.Y. Oct. 30, 2007) (awarding $5,000 in actual mental anguish damages where plaintiff received numerous threatening calls and letters over a *two-year period* which caused him to lose sleep, become depressed and suffer heart problems); *Chiverton v. Fed. Fin. Group, Inc.*, 399 F. Supp.2d 96, 102 (D. Conn. 2005) (where the Court awarded plaintiff $5,000 in damages after debt collection agency harassed plaintiff for *several months*); *EMC Mortgage Corp., v. Jones*, 252 S.W.3d 857, 871 (Tex. App. Dallas 2008, no pet.) (upholding award of $5,000 where plaintiff became so depressed from debt collector's action that he had to be put on medication); *Household Credit Services, Inc. v. Driscol*, 989 S.W.2d 72, 92 (Tex. App.– El Paso 1998, pet. denied) (upholding $150,000 award against a debt collection agency where defendant harassed plaintiff for over a year with vulgar calls several times a day, made death threats against the plaintiff, and caused plaintiff to suffer physical ailments and severe depression).

[6]Plaintiff also seeks treble damages under the Texas DTPA, Tex. Bus.& Comm. Code, § 17.50, based on her Texas Collection Practices Act claim. However, it is unclear whether Plaintiff has standing under the Texas DTPA to bring this claim. See *Cushman v. GC Services, LP.*, 2009 WL 3063341 at * 11-12 (S.D. Tex. Aug. 13, 2009) (finding that cardholder who brought unfair debt collection case against debt collection agency was not a "consumer" and thus did not have standing to bring suit under the Texas DTPA and finding that "tie-in" provision of TDCPA did not exempt her from consumer status). Regardless, the Court need not delve into this issue since it has already recommended that the District Court award Plaintiff treble damages under RICO. Thus, trebling damages under the Texas DTPA would be redundant.

*Cleartel Communications, Inc.*, 304 F. Supp.2d 1, 12 (D.D.C. 2004); *Resolution Trust Corp. v. S & K Chevrolet*, 868 F. Supp. 1047, 1062 (C.D. Ill. 1994). Accordingly, Plaintiff is entitled to an additional $6,000.00 under 18 U.S.C. § 1964(c).

**D.    Equitable Relief**

Plaintiff also requests equitable relief under § 1964(a) of RICO, asking the Court to liquidate Defendant's assets, appoint a receiver and distribute the proceeds to the Plaintiff "in compensation of those sums awarded in this final judgment."

The Fifth Circuit has not decided whether equitable relief is available to a private civil RICO plaintiff. *See Richard v. Hoechst Chemical Group Inc.*, 355 F.3d 345, 354-55 (5th Cir. 2003) ("This Court has not decided whether equitable relief should be available for private civil RICO plaintiffs under 18 U.S.C. § 1964(a)-(c)"), *cert. denied*, 543 U.S. 917 (2004); *Price v. Pinnacle Brands*, 138 F.3d 602, 605 n. 5 (5th Cir. 1998) (stating that this Court "has specifically reserved ruling on whether all forms of injunctive relief and other equitable relief are foreclosed to private plaintiffs under RICO") (internal quotations omitted). Even if equitable relief were available to a private party, however, the Court finds that it would not be appropriate in this case.

Section 1964(a) provides the following:

> The district courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restriction on the future activities or investments of any person including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provisions for the rights of innocent persons.

18 U.S.C. § 1964(a). The Fifth Circuit has adopted the Second Circuit's interpretation of § 1964(a) to mean that "equitable remedies are only proper to 'prevent and restrain future conduct rather than to punish past conduct.'" *Richard*, 355 F.3d at 354 (quoting *United States v. Carson*, 52 F.3d 1173, 1181 (2d Cir. 1995)). Thus, equitable relief under § 1964(a) is only available to prevent ongoing and future misconduct. Based upon Plaintiff's allegations, it is clear that Plaintiff is not seeking equitable relief to "prevent and restrain" Defendant from committing future RICO violations, but rather is seeking equitable relief to compensate her for her past losses. Because compensating past injuries is not a proper remedy under § 1964(a)**,** the Court declines to award Plaintiff equitable relief in this case under § 1964(a).

**E.    Attorney's Fees and Costs**

Lastly, Plaintiff seeks $12,160.95 in attorney's fees and expenses for the prosecution of this case through the entry of judgment, and if necessary, approximately $25,000 in appeal costs. Because Plaintiff has been successful in the instant action and has recovered damages in this case, Plaintiff is entitled to recover reasonable attorney's fees and expenses under § 1692k(a)(2)(B) of the FDCPA,[7] § 1964(c) of RICO,[8] and the TDCA, § 392.403(b) of the Texas Finance Code.[9] Courts in this Circuit apply the "lodestar" analysis to determine attorney fees. *Turner v. Oxford Management Services, Inc.*, 552 F. Supp.2d 648, 650 (S.D. Tex. 2008). The lodestar is the product of the number

---

[7]*See Hester v. Graham, Bright & Smith, P.C.*, 289 Fed. Appx. 35, 44 (5th Cir. 2008) (noting that the FDCPA provides for recovery of a reasonable attorney's fees).

[8]*See Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 480 (2006) (noting that plaintiff may sue for treble damages and attorney's fees under RICO).

[9]*See Jackson Law Office, P.C. v. Chappell*, 37 S.W.3d 15, 30-31 (Tex. App.– Tyler 2000, pet. denied) (noting that a party may only be awarded attorney's fees under the Texas Debt Collection Act if he successfully maintains an action for actual damages).

of hours reasonably expended on the litigation by the movant's attorney and the attorney's reasonable hourly billing rate. *Id.* (citing *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 404 (5th Cir. 2002) and *Riley v. City of Jackson*, 99 F.3d 757, 760 (5th Cir. 1996)). Plaintiff's Counsel testified at the hearing that he spent a total of 31.8 hours on the case and that his billing rate is $350 per hour. Mr. Probus testified that he graduated from The University of Texas School of law in 1988 and that he has extensive litigation experience involving creditors rights/collection, business transactions and consumer rights. Based upon Mr. Probus' testimony regarding his experience and his actual work on the case, the Court finds that Counsel's request for $12,160.95 in attorney's fees and costs is reasonable and therefore will recommend that the District Court award counsel such fees and costs.[10]

## IV. RECOMMENDATION

The undersigned **RECOMMENDS** that the District Judge **GRANT** Plaintiff Rachel Bullock's Motion for Entry of Final Default Judgment (Clerk's Doc. No. 8) and enter a final judgment against Defendant Abbott and Ross Credit Services, L.L.C. The Court **FURTHER RECOMMENDS** that the District Court award Plaintiff Rachel Bullock **$21,160.95** in **TOTAL DAMAGES**, including post-judgment interest under 28 U.S.C. § 1961, in this case, as follows:

(1) $1,000.00 in statutory damages under 15 U.S.C. § 1692k(b);

(2) $2,000.00 in mental anguish damages under 15 U.S.C. § 1692k(a)(1) and TEX. FIN. CODE ANN. § 392.403(a)(2);

(3) $6,000.00 in treble damages under 18 U.S.C. § 1964(c); and

(4) $12,160.95 in attorney's fees and costs under 15 U.S.C. § 1692k(a)(2)(B),18 U.S.C. § 1964(c), and TEX. FIN. CODE ANN. § 392.403(b).

---

[10]However, the Court declines to award Plaintiff $25,000 in attorney's fees for a possible appeal of this case at this time. That award would be appropriate only in the event an appeal takes place, and can be addressed in that eventuality.

## V.  WARNING

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-153, 106 S.Ct. 466, 472-74 (1985); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 3rd day of December, 2009.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE